UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLIFTON BADEAUX                                    CIVIL ACTION

VERSUS                                                      NO. 19-13427

EYMARD BROTHERS TOWING                   SECTION "R" (3)
COMPANY, INC., ET AL.

**ORDER AND REASONS**

Before the Court is defendants American River Transportation Co., LLC ("ARTCO") and Archer-Daniels-Midland Company's ("ADM") motion to exclude or limit the testimony of Robert Borison.[1]  Plaintiff Clifton Badeaux opposes the motion.[2]  Also before the Court is plaintiff's motion to exclude or limit the testimony of Ronald Campana.[3]  Defendant Eymard Brothers Towing Company, Inc. ("Eymard") opposes plaintiff's motion.[4]

For the following reasons, the Court grants ARTCO and ADM's motion to exclude or limit the testimony of Robert Borison.  The Court also grants plaintiff's motion to exclude or limit the testimony of Ronald Campana.

---

[1]    R. Doc. 65.
[2]    R. Doc. 69.
[3]    R. Doc. 66.
[4]    R. Doc. 71.

## I.    BACKGROUND

This case arises out of a slip-and-fall on a spar barge in Luling, Louisiana.[5]  On January 3, 2019, plaintiff Clifton Badeaux, a captain of the M/V PEARL C. EYMARD, was attempting to board the vessel when he slipped and fell, sustaining injuries.[6]  The vessel was owned and operated by defendant Eymard,[7] and the barge was owned and operated by defendant ARTCO, a subsidiary of defendant ADM.[8]

On November 5, 2019, Badeaux filed suit against Eymard, ARTCO, and ADM, alleging that defendants' negligence contributed to his injuries.[9]

On October 6, 2021, defendants ARTCO and ADM moved to exclude or limit the testimony of Robert Borison, plaintiff's liability expert.[10] Defendants contend that Borison's expert testimony will not assist the trier of fact in this case, because it is a routine slip-and-fall case, involving facts that a lay factfinder can understand without expert assistance.[11]  They further argue that Borison's testimony and report are not reliable because he never personally inspected the barge, nor does he rely on the testimony of another

---

[5]    R. Doc. 5 ¶ 2.
[6]    *Id.* ¶¶ 4-5; *see also* R. Doc. 66-7 at 1-2.
[7]    R. Doc. 5 ¶ 1.
[8]    *Id.* ¶¶ 2-3.
[9]    R. Doc. 1; *see also* R. Doc. 5 (Amended Complaint).
[10]   R. Doc. 65.
[11]   R. Doc. 65-1 at 3-5.

expert who timely inspected the barge.[12]   They also contend that Borison relies on disputed facts,[13] and that he makes impermissible legal conclusions.[14]  Plaintiff opposes the motion, contending that Borison formed his opinions based on reliable evidence, which he asserts is the same evidence on which defendants' own safety expert relies.[15]

Plaintiff in turn moves to exclude or limit the testimony of Ronald Campana, defendants' liability expert.[16]   He argues that all of Campana's listed opinions should be excluded because they either fall outside of his expertise, merely recite deposition testimony, criticize plaintiff's liability expert, or make improper legal conclusions.[17]   Defendant Eymard opposes the motion, contending that Campana's conclusions are based on reliable methodology.[18]

The Court considers the parties' arguments below.

---

[12]  *Id.* at 5-6.
[13]  *Id.* at 6.
[14]  *Id.* at 6-8.
[15]  R. Doc. 69 at 4-7.
[16]  R. Doc. 66.
[17]  R. Doc. 66-1 at 4.
[18]  R. Doc. 71 at 4-7.

## II.   LEGAL STANDARD

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).  Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 "requires the district court to act as a gatekeeper to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Metrejean v. REC Marine Logistics, LLC*, No. 08-5049, 2009 WL 3062622, at *1 (E.D. La. Sept. 21, 2009) (quoting *Daubert*, 509 U.S. at 589).  This gatekeeping function applies to all forms of expert testimony.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

4

The Court's gatekeeping function consists of a two-part inquiry into reliability and relevance. First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the Court to assess whether the expert's reasoning and methodology underlying the testimony are valid. *See Daubert*, 509 U.S. at 593. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* at 590. "[F]undamentally unsupported" opinions "offer[] no expert assistance to the [trier of fact]" and should be excluded. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005). Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case, and whether it will thereby assist the trier of fact to understand the evidence. In other words, it must determine whether it is relevant. *See Daubert*, 509 U.S. at 591. Further, expert testimony is unnecessary if the court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

The Court also recognizes that this case involves a nonjury trial. In *Daubert*, the Supreme Court's overriding concern was with the problem of

exposing the jury to confusing and unreliable expert testimony. *See* 509 U.S. at 595-97.  In the wake of *Daubert*, several courts have observed that in the context of a bench trial, the Court's gatekeeping obligation is less urgent, because the gatekeeper and trier of fact are the same. *See, e.g.*, *Volk v. United States*, 57 F. Supp. 2d 888, 896 n.5 (N.D. Cal. 1999) ("[I]t bears noting that the *Daubert* gatekeeping obligation is less pressing in connection with a bench trial."); *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1301-02 (Fed. Cir. 2002) (explaining that in a bench trial the *Daubert* standard must still be applied but the concerns about expert evidence misleading a jury "are of lesser import"); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury.").

The Court's role as a gatekeeper does not replace the traditional adversary system.  As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).  "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight," rather than

6

the admissibility, of that opinion. *United States v. Hodge*, 933 F.3d 468, 478

(5th Cir. 2019) (quoting *United States v. 14.38 Acres of Land, More or Less*

*Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

## III.  DISCUSSION

### A.    Robert Borison

Robert Borison offers two detailed "opinions" in his expert report: the

first regarding an "equipment problem,"[19] and the second regarding a

"failure to use stop work authority problem."[20]  The Court considers each

opinion in turn.

Under Opinion #1, the "Equipment Problem," Borison first states that

"ARTCO[] fail[ed] to provide Mr. Badeaux with a safe means of

ingress/egress to and from his vessel from their dock."[21]  In support, Borison

spends three brief paragraphs discussing the conditions on the dock on the

date of plaintiff's accident.  The Court excludes this portion of Opinion #1

because it does not "help the trier of fact to understand the evidence or to

determine a fact in issue."  Fed. R. Evid. 702(a).  Borison merely recites basic

facts that he derives from the record, including that the barge where plaintiff

---

[19]   R. Doc. 65-2 at 6.
[20]   *Id.* at 8.
[21]   *Id.* at 6.

slipped "ha[d] most of the non-skid coating worn off of it,"[22] and that "the deck was wet with rain."[23]  The Court does not require expert testimony to understand these simple physical facts related to the condition on the day of plaintiff's accident.  *See Peters*, 898 F.2d at 450 (holding that the court does not require expert testimony if it can "adeptly assess [the] situation using only [its] common experience and knowledge"); *see also Douglas v. Chem Carriers Towing, LLC*, 431 F. Supp. 3d 830, 835-36 (E.D. La. 2019) (excluding the testimony of a marine safety expert because the jurors could understand the evidence "using only their common experience and knowledge" (citing *Peters*, 898 F.2d at 450)).  The first three paragraphs of Borison's Opinion #1 are therefore excluded.

In the next three sections of Borison's Opinion #1, he discusses the materials comprising the surface of the deck where plaintiff allegedly slipped.[24]  First, Borison states that open bar grating is "the best surface for the prevention of slipping in almost every environment, but especially . . . in oil, snow, rain and grain dust."[25]  The Court excludes this opinion because there is no indication that it is "the product of reliable principles and

---

[22]    *Id.*
[23]    *Id.*
[24]    *Id.* at 6-7.
[25]    *Id.* at 6.

methods." Fed. R. Evid. 702(c). Borison cites no industry standards, technical materials, or other source supporting this broad assertion regarding the non-slip properties of open bar grating. The opinion does not reflect the application of any expertise. Borison does not even offer a reason why this proposition is true. And Borison's opinion that ARTCO's barge maintenance manager used suboptimal methods and materials to coat the deck suffers from similar and other problems. His opinion that sand blasting is a more thorough way to prepare a paint surface than pressure washing[26] does not require specializing training or experience, and is well within the competence of a lay person. And his assertion that water-based paint wears faster than epoxy paint, or epoxy paint with a non-skid medium added,[27] does not reflect the application of any expertise. Borison cites no industry standards, technical material, or other source requiring, or even recommending, the application non-skid surfaces on decks of this type, or specifying any application procedures, or types of paint and coating materials for the maintenance of barge decks. To the extent that Borison purports to rely on his "experience [or] training," Fed. R. Evid. 702, he does not link his conclusion to any particular aspect of his experience or training.

---

[26]     *Id.* at 7.

[27]     *Id.*

9

The Court therefore finds that this testimony is not based on "reliable principles and methods."  Fed. R. Evid. 702(a).  For these reasons, the Court excludes paragraphs four through eight of Borison's Opinion #1.

The final segment of Borison's Opinion #1 consists of text from the Occupation Safety and Health Administration's ("OSHA") regulations.[28]  The Court excludes this material, because it is irrelevant to the admitted testimony, and because the Court does not require an expert to understand the written text of federal regulations.

Borison's Opinion #2 states that "ARTCO [and] Eymard Brother Towing[] fail[ed] to use their stop work authority and abate the slipping hazard that was present on the gunnel of the spar barge *AB227b*."[29]  The Court excludes Opinion #2 in its entirety, because it does not "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  In his three-paragraph opinion, Borison merely repeats and rephrases his view that ARTCO and Eymard should have known of a slipping hazard on the dock, and that they failed to report it or otherwise correct it. The Court can rely on its "common experience and knowledge," *Peters*, 898 F.2d at 450, as well as the legal arguments of counsel, to assess whether

---

[28]    *Id.* at 7-8.

[29]    *Id.* at 8.

defendants had, and breached, any duties relating to the surface of the dock. And to the extent that Borison purports to make a legal conclusion regarding a breach of duty by defendants, he may not do so. *See Bodzin v. City of Dallas*, 768 F.2d 722, 725 (5th Cir. 1985) ("The judge is the source of the law and the only [legal] expert needed . . . .") (citing *United States v. Burton*, 737 F.2d 439, 443-44 (5th Cir. 1984)).  While Borison disclaims that his opinions "are not intended to be legal conclusions,"[30] his Opinion #2 is not useful as anything else.  The Court therefore excludes Borison's Opinion #2.

For the foregoing reasons, the Court grants defendants' motion to exclude or limit the testimony of Robert Borison.  The Court excludes Borison's expert report in its entirety.  Finding no admissible opinions to be offered by Borison, the Court orders that Borison may not testify at trial in this matter.

### B.   Ronald Campana

Plaintiff moves to exclude and/or limit the testimony of Ronald Campana, defendants' marine safety expert.[31]  Campana concludes his expert report with a list of 19 opinions.[32]  The Court finds that many of Campana's

---

[30]   *Id.* at 9,
[31]   R. Doc. 66.
[32]   R. Doc. 66-2 at 16-18.

listed opinions suffer from common deficiencies, warranting their exclusion. Accordingly, rather than proceed through the 19 opinions individually, the Court considers the types of flaws presented by Campana's opinions, and notes at each juncture which of his opinions are thereby excluded.[33]

Most of Campana's opinions are mere restatements or summaries of facts in the record, often coupled with an assertion that plaintiff's behavior was "not proper," that he "failed" to take some proper course of action, or that he "showed poor judgment."[34]   The Court excludes these opinions because they do not "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  The Court does not require an expert's assistance to understand, for example, that walking on a wet surface as if it were a dry surface "is not proper."[35]   The Court also does not require expert testimony to discern basic facts, including whether plaintiff

---

[33]   While Campana's opinions are not numbered in his report, for the sake of clarity, the Court numbers his opinions, based on the order in which they are listed in his report.

[34]   *See* R. Doc. 66-2 at 16.

[35]   *Id.* ("Opinion #8) ("As stated several times, it was raining.  Walking on the vessel and treating this like a dry day embarkation is not proper."); *see also id.* (Opinion #4) ("Captain Badeaux showed poor judgment by walking in an area he determined was not safe, especially in the rain.").

had both of his hands free,[36] whether the soles of his boots were worn,[37]

whether there were other locations where he could have boarded the vessel,[38]

or whether Eymard trained him on company procedures.[39]   As to these

---

[36]   *See id.* (Opinion #2) ("Captain Badeaux restricted his own range of body movement by not having one hand for himself.  Instead, he tried to board the vessel in the rain with his burger bag in his right hand.").

[37]   *See id.* at 17 (Opinion #10) ("It is unclear if the soles of Captain Badeaux's boots were worn or if they were even steel toe, low quarter oil resistant sole shoes as required by the Company.  It is also unclear if the paint on the sole of his boots played a role in this alleged incident. It is clear that they were not effective in being slip resistant as this incident was reported.  Additionally, based on the photographs taken by Mr. Lerille shortly after Captain Badeaux fell, it clearly shows his work shores/boots had heavily worn soles as no treads were visible at all and paint was evident on the soles.  Although Captain Badeaux testified he normally changes out his shoes every six months, the shoes he was wearing, based on the photographs, are way older than six months or sustained abnormal wear and tear for a Captains' shoe. Captains do not perform deck work and spend a vast majority of their time in the wheelhouse.").

[38]   *See id.* at 16 (Opinion #7) (Captain Badeaux stated that there was nothing wrong with where the vessel was and that he had moored in that exact same position several times.  Captain Badeaux had the power and obligation to find a location that he felt was safe to moor the vessel. When he arrived and found the area unsafe, he could have called Captain Haydel and asked him to move the vessel.  This did not occur."); *id.* at 17 (Opinion #12) ("If there was a significant gap between the spar barge and the vessel, the vessel could be maneuvered to close this gap or the vessel could push into a different place."); *id.* at 18 (Opinion #18) ("Captain Badeaux could have boarded the vessel from the portside push knee which was adjacent to the section of spar barge that apparently adequate non-skid yellow paint but elected to ignore the open and obvious area of the spar barge that lacked non-skid paint. All he had to do was request the vessel to push into the dock.").

[39]   *Id.* at 17 (Opinion #15) ("There is evidence that Eymard Brothers Towing Company, Inc. provided training to Captain Badeaux on

issues, the Court can "adeptly assess [the] situation using only [its] common experience and knowledge." *Peters*, 898 F.2d at 450; *see also Douglas*, 431 F. Supp. 3d at 835-36 (citing *Peters*, 898 F.2d at 450)).  For these reasons, the Court excludes Campana's Opinions #2,[40] #4,[41] #5,[42] #6,[43] #7,[44] #8,[45]

---

Company procedures, including a Safety Orientation and Man Overboard Training.").

[40] *See supra* note 36.

[41] *See supra* note 35.

[42] R. Doc. 66-2 at 16 (Opinion #5) ("Captain Badeaux failed to follow Company procedures by not reporting a condition he felt was unsafe. He had several administrative tools at his disposal, and he chose not to use any of them.").

[43] *Id.* (Opinion #6) ("Captain Badeaux failed to warn his Company, his crewmembers, and ARTCO/ADM about his concerns that the spar barge was unsafe due to lack of non-skid.").

[44] *See supra* note 38.

[45] *See supra* note 35.

#9,[46] #10,[47] #11,[48] #13,[49] #14,[50] #15,[51] #17,[52] #18,[53] the latter portion of

Opinion #12,[54] and the last sentence of Opinion #16.[55]

The Court also excludes Campana's Opinion #3, which states:

> Captain Badeaux expressed fear that he would be fired if he told his company about what he perceived as an unsafe condition with the spar barge. This is contrary to the Company procedures he had signed approximately two months prior to the incident and Master's authority as defined in 46 CFR 140.210. Mr. Gary Lerille, Safety

---

[46] R. Doc. 66-2 at 16 (Opinion #9) ("Captain Badeaux did not set the proper example for his crew by not reporting what he believed was an unsafe condition."). The Court also notes that Opinion #9 is facially irrelevant. Whether Captain Badeaux was negligent as to a duty owed to crewmembers is not an issue in this case, which pertains to the cause of his slip-and-fall.

[47] *See supra* note 37.

[48] R. Doc. 66-2 at 17 (Opinion #11) ("Captain Badeaux is responsible for assessing the loss exposures of the vessel. He admitted that he knew about the spar barge but made no changes and informed no one of this issue as he saw it.").

[49] *Id.* (Opinion #13) ("Eymard Brothers Towing Company, Inc. does not own or operate spar barge AB227B nor are they responsible for the maintenance or inspections of this barge.").

[50] *Id.* (Opinion #14) ("Captain Badeaux admitted during his deposition that he considered the PEARL C EYMARD to be a safe place to work. This vessel was owned and operated by Eymard Brothers Towing Company, Inc.").

[51] *See supra* note 39.

[52] R. Doc. 66-2 at 18 (Opinion #17) ("The PEARL C EYMARD was an inspected vessel at the time of this alleged incident.").

[53] *See supra* note 38.

[54] *See supra* note 38.

[55] R. Doc. 66-2 at 18 (Opinion #16) ("It is my opinion that Captain Badeaux lacked Situational Awareness, ignored the open and obvious hazards, and failed to exercise good judgment in the manner and method he chose to board the vessel.").

> Manager for Eymard Towing denied there would be any
> repercussions for any employee reporting an unsafe
> condition.[56]

An expert "opinion" stating that plaintiff's testimony is inconsistent with
other parts of the record is both unhelpful to the factfinder, *see* Fed. R. Evid.
702(a), and also risks impermissibly invading the factfinding province of the
Court, *see Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 618
(5th Cir. 1999) ("Credibility determinations, of course, fall within the jury's
province."); *see also In re M&M Wireline & Offshore Servs., LLC*, No. 15-
5338, 2016 WL 4681196, at *8 (E.D. La. Sept. 7, 2016) (excluding a marine
expert's testimony because his "statements involve weighing the veracity and
credibility of [plaintiff]'s version of events against the testimony provided by
Defendants' witnesses, impermissibly infringing on the role of the
factfinder"). The Court therefore excludes Campana's Opinion #3.

Furthermore, the Court excludes those portions of Campana's listed
opinions that make impermissible legal conclusions. Specifically, Campana
purports to state whether and to what extent OSHA regulations apply to the
M/V PEARL C. EYMARD. The Court will neither require nor permit expert
testimony on a legal issue. *See Bodzin*, 768 F.2d at 725 ("The judge is the
source of the law and the only [legal] expert needed . . . ."). For these

---

[56]      *Id.* at 16.

reasons, the Court excludes Campana's Opinion #1,[57] the first portion of Opinion #12,[58] and the first portion of Opinion #16.[59]

Finally, the Court excludes Campana's Opinion #19, which states: "It is my professional opinion Captain Badeaux more likely than not, slipped or lost his balance on the kevel which[,] accented by his worn sole shoes, caused his accident."[60]   Whether plaintiff slipped on the spar barge, or the kevel, is a contested issue.   While plaintiff testified that he slipped on the surface of the barge,[61] witness Jacob Vega testified that plaintiff told him immediately following the accident that he "stepped on the kevel and slipped and fell on [his] back."[62]   In resolving this factual dispute, Campana asserts that, if plaintiff had slipped on the barge rather than the kevel, he "would not have landed on the grating," and that, therefore, "[t]he only way possible . . . for him to be in the position seen in the [contemporaneous] photographs, is for him to have slipped or lost his balance off the kevel."[63]   But Campana's

---

[57]   *Id.* (Opinion #1) ("OSHA regulations do not apply to inspected tugs.").

[58]   *Id.* at 17 (Opinion #12) ("There is no requirement in Subchapter M for this vessel to carry a gangway.   There is no steep incline or decline for that matter from the spar barge to the fleet deck of the vessel.").

[59]   *Id.* at 16-17 ("[A]s discussed earlier, the vessel must comply with Subchapter M and is not subject to OSHA.").

[60]   *Id.* at 18.

[61]   R. Doc. 65-5 at 2.

[62]   R. Doc. 66-6 at 2.

[63]   R. Doc. 66-2 at 15.

resolution of this factual dispute does not reflect the application of any expertise.  And to the extent that such an analysis could benefit from an expert opinion, Campana does not have the requisite expertise.  He is a marine safety professional, who is not "qualified . . . by knowledge, skill, experience, training, or education" to conduct a biomechanical analysis regarding the physics of plaintiff's fall.  Fed. R. Evid. 702.  Accordingly, the Court excludes Campana's Opinion #19.

For the foregoing reasons, the Court grants plaintiff's motion to exclude the expert testimony of Ronald Campana.  The Court excludes Campana's expert report in its entirety.  Finding no admissible opinions to be offered by Campana, the Court orders that Campana may not testify at trial in this matter.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendants ARTCO and ADM's motion to exclude or limit the testimony of Robert Borison.  The Court also GRANTS plaintiff's motion to exclude or limit the testimony of Ronald Campana.  Borison and Campana may not testify at trial.

New Orleans, Louisiana, this  __19th__  day of October, 2021.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE