UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLIFTON BADEAUX                                          CIVIL ACTION

VERSUS                                                       NO. 19-13427

EYMARD BROTHERS TOWING                          SECTION "R" (3)
COMPANY, INC., ET AL.


## **ORDER AND REASONS**


Before the Court are cross-motions for summary judgment by third-party defendant Stratford Insurance Company ("Stratford"),[1] and defendants and third-party claimants American River Transportation Company, LLC ("ARTCO") and Archer-Daniels-Midland Company ("ADM").[2] ADM and ARTCO oppose Stratford's motion,[3] and Stratford opposes ADM and ARTCO's motion.[4]

For the following reasons, the Court grants ADM and ARTCO's motion for summary judgment, and denies Stratford's motion for summary judgment.

---

[1]     R. Doc. 61.
[2]     R. Doc. 64.
[3]     R. Doc. 68.
[4]     R. Doc. 74.

## I.    BACKGROUND

This case arises out of a slip-and-fall on a spar barge in Luling, Louisiana.[5]  Plaintiff Clifton Badeaux was a captain of the M/V PEARL C. EYMARD, a vessel owned by defendant Eymard Towing Company ("Eymard").[6]  On January 3, 2019, plaintiff was in the process of stepping onto the vessel from an adjacent spar barge when he slipped and fell.[7]  He testified that he does not recall whether his foot ever touched the vessel.[8]  The spar barge was owned and operated by defendant ARTCO, a wholly owned subsidiary of defendant ADM.[9]

At the time of the accident, Eymard had entered a contract with ADM, in which Eymard agreed to employ its vessel, the M/V PEARL C. EYMARD, "in the movement of barges primarily in the vicinity of [ADM's] export facility in Destrehan, Louisiana."[10]  Under this Time Charter Agreement (the "Agreement"), Eymard was the "Owner," and ADM the "Charterer."[11]  As part

---

[5]     R. Doc. 5 ¶ 2.
[6]     R. Doc. 5 ¶ 1.
[7]     *Id.* ¶¶ 4-5; R. Doc. 64-6 at 7 (Deposition of Clifton Badeaux).
[8]     R. Doc. 64-6 at 7 (Deposition of Clifton Badeaux) ("I can't remember if I touched the boat yet or not.  It just—it happened so quick.  I did pick up my left foot to step on the PEARL EYMARD, and the next thing I know my right foot just come out from underneath me.").
[9]     R. Doc. 5 ¶¶ 2-3; R. Doc. 29 ¶ 3.
[10]    R. Doc. 61-2 at 1.
[11]    *Id.*

of the Agreement, Eymard was required to procure and maintain insurance on the vessel, including:

> Primary and excess protection and indemnity, . . . with limits of $2,000,000, deductible not to exceed $5,000 with "as owner of" clause or other such limiting clause deleted as to Charterer, its affiliates or related companies, with contractual coverage to cover the obligation of Owner to Charterer under this Agreement.[12]

This section also provided that "[a]ll policies shall include Charterer, and its affiliated or related companies, as an additional assured and will contain a waiver of subrogation in their favor."[13]

As required by the Agreement, Eymard procured protection and indemnity ("P&I") coverage for the M/V PEARL C. EYMARD, through an insurance policy with Stratford (the "Policy"), effective from August 22, 2018 to August 22, 2019.[14] The Policy provides that, "in respect of the vessel called the [M/V PEARL C. EYMARD],[15] Stratford, the "Assurer,"

> hereby undertakes to make good to the Assured or the Assured's executors, administrators, and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein[16] have become

---

[12]   *Id.* at 5.

[13]   *Id.*

[14]   R. Doc. 61-3 at 4-5.

[15]   *Id.* at 42; *see also id.* at 5 (listing the "Pearl C Eymard" on the Schedule of Vessels).

[16]   The phrase "as owners of the vessel named herein" is deleted as to ARTCO and ADM, as explained *infra* text accompanying notes 20-22.

liable to pay and shall pay on account of the liabilities, risks, events and/or happenings set forth: . . .

(1)    Liability for loss of life, or personal injury to, or illness of, any person, excluding however, unless otherwise agreed by endorsement hereon, liability under any Compensation Act to any employee of the Assured, (other than a seaman) or in case of death to his beneficiaries or others.[17]

. . .

(14)    Costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided.[18]

The Stratford Policy also permits Eymard to name "Additional Assureds," subject to certain conditions. The "General Conditions" section of the Policy provides as follows:

Privilege is hereby granted the Assured to name others for whom the Assured is performing work as Additional Assureds on this Policy provided the Assured shall have exercised this option prior to loss. Privilege is also granted the Assured to release from Liability others for whom the Assured is performing operations, or who are performing operations for the Assured, provided the Assured shall have exercised this option prior to loss; and these insurers waive all rights of subrogation against any parties so released. . . .

Notwithstanding the preceding provisions, no party shall be deemed an Additional Assured or favored with a waiver of subrogation on any vessel insured hereunder which is

---

[17]    *Id.* at 42.
[18]    *Id.* at 45.

not actually engaged or involved in the intended operations at the time of the loss, if any.[19] . . .

Where required by contract, or agreed to by the Assured, it is understood and agreed that:

1.   Permission is also granted to name as Additional Assureds with waiver of subrogation and notice of cancellation to those individuals, partnerships, joint ventures, or corporations for whom the Assured is working, directly or indirectly, when required, provided the loss or damage, as a result of which rights would arise, occurs during and as a result of the actual performance of the work.

. . .

7.   The so-called "Limitation of Liability," "Other Than Owner" and "As Owner Of" clauses as they appear in the printed forms contained herein shall not apply.[20]

Pursuant to the Agreement's requirement that the "as owner of" clause be deleted as to ADM and ARTCO,[21] and the Policy's provision deleting that clause, the operative language regarding coverage is that Stratford "hereby undertakes to make good to the Assured or the Assured's executors, administrators, and/or successors, all such loss and/or damage and/or expense as the Assured shall . . . have become liable to pay and shall pay on

---

[19]   R. Doc. 61-3 at 6.

[20]   *Id.*

[21]   R. Doc. 61-2 at 5 (requiring Eymard to secure "[p]rimary and excess protection and indemnity, . . . with limits of $2,000,000, deductible not to exceed $5,000 with 'as owner of' clause or other such limiting clause deleted as to Charterer, its affiliates or related companies").

account of the liabilities, risks, events and/or happenings set forth."[22]   No party disputes that the "as owner of" clause has been deleted.

On November 5, 2019, plaintiff Clifton Badeaux filed suit against Eymard, ARTCO, and ADM, alleging that defendants' negligence contributed to his injuries.[23]   On December 9, 2020, ADM and ARTCO filed a third-party complaint against Stratford, seeking a declaratory judgment that Stratford owes ARTCO and ADM defense and indemnity for plaintiff's claims against them.[24]

Now, Stratford and ADM/ARTCO each move for summary judgment on whether Stratford owes ADM and ARTCO defense and indemnity for plaintiff's claims.[25]   ADM and ARTCO contend that Stratford must cover the expenses because, among other arguments, (i) ARTCO and ADM are Additional Assureds, covered for this incident under the Policy,[26] and (ii) Eymard is contractually obligated to indemnify ADM, and Stratford must cover that liability under the Policy.[27]   Stratford, on the other hand, contends that it does not owe coverage to ADM or ARTCO because (i) ARTCO is not

---

[22]   R. Doc. 61-3 at 42.
[23]   R. Doc. 1; *see also* R. Doc. 5 (Amended Complaint).
[24]   R. Doc. 29.
[25]   R. Docs. 61 & 64.
[26]   R. Doc. 64-1 at 12-15; R. Doc. 68 at 4-8; R. Doc. 76 at 5-7.
[27]   R. Doc. 68 at 1-4; R. Doc. 76 at 1-3.

an Additional Assured under the Policy,[28] (ii) while ADM is an Additional Assured, the Policy does not cover plaintiff's incident because it was not a vessel-related liability,[29] and (iii) Eymard does not owe indemnification for any negligence by ARTCO.[30]

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law'

---

[28]   R. Doc. 74 at 4-5.

[29]   R. Doc. 61-1 at 6-8.

[30]   *Id.* at 5-6; R. Doc. 74 at 1-4.

7

are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an

essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution.  *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  (quoting *Celotex*, 477 U.S. at 322)).

## III.   DISCUSSION

As a threshold matter, the Court must determine which law to apply to this dispute.  In maritime cases, a federal court "must apply general federal maritime choice of law rules."  *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 890 (5th Cir. 1991) (citing *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 880 n.3 (5th Cir. 1987)).  "Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable."  *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009).  However, the contractually chosen law

will not govern if "the chosen state has no substantial relationship to the parties or the transaction, and there is no other reasonable basis for the parties' choice." *Id.* (cleaned up).

Here, while Stratford's contract with Eymard contains a choice-of-law provision stating that the contract "will be governed and construed in accordance with the laws of the State of New York,"[31] the Court finds not a single connection between New York and these parties or this incident. Defendants ADM and ARTCO are Delaware corporations, with principal places of business in Illinois.[32] Stratford is a New Hampshire corporation, with its principal place of business in New Jersey.[33] The Policy covers a boat owned by Eymard, a Louisiana corporation,[34] doing business exclusively in Louisiana. The incident underlying the insurance claim took place in Louisiana,[35] and involves a Louisiana citizen.[36] And both Stratford and ADM/ARTCO cite Louisiana law in their respective motions for summary judgment as to the meaning of the insurance contract.[37] The Court therefore

---

[31]   R. Doc. 61-3 at 17.

[32]   R. Doc. 29 ¶¶ 1-2.

[33]   *Id.* ¶ 4; R. Doc. 32 ¶ 4.

[34]   R. Doc. 61-3 at 1; R. Doc. 61-2 at 1.

[35]   R. Doc. 1 ¶ 4.

[36]   R. Doc. 5 at 1 ("[P]laintiff CLIFTON BADEAUX [is] . . . a resident of the Parish of Lafourche, State of Louisiana . . . .").

[37]   *See* R. Docs. 61-1 & 74 (Stratford's briefs); R. Docs. 64-1, 68 & 76 (ADM and ARTCO's briefs).

finds that, notwithstanding the choice-of-law provision, New York "has no substantial relationship to the parties or the transaction," and that there is "no other reasonable basis for the parties' choice." *Id.* Accordingly, the Court declines to enforce the choice-of-law provision.

In the absence of an appropriate choice-of-law provision, "the interpretation of a contract of marine insurance is . . . to be determined by reference to appropriate state law," unless there is a "specific and controlling federal rule." *Anh Thi Kieu*, 927 F.2d at 886. The Fifth Circuit has identified three factors that a court should consider to determine whether a federal rule controls a given issue: "(1) whether the federal maritime rule constitutes 'entrenched federal precedent'; (2) whether the state has a substantial and legitimate interest in the application of its law; [and] (3) whether the state's rule is materially different from the federal maritime rule." *Id.* "These factors are merely instructive and not dispositive." *Id.* at 887. With this approach, the Fifth Circuit has "'stacked the deck' in favor of state law." Thomas J. Schoenbaum, 2 Admiralty & Maritime Law, *Marine Insurance* § 9 (6th ed. 2020).

### A.  Additional Assureds

The Court must first determine whether ADM and ARTCO are Additional Assureds under Stratford's insurance policy covering the M/V PEARL C. EYMARD.  As to this issue, the Court finds that there is no federal maritime rule on point.  *See Higginbotham v. S. Cent. Towing Co.*, No. 09-390, 2010 WL 2921637, at *2 (W.D. La. July 16, 2010) (citing *Com. Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 30 (2d Cir. 1999) (noting that there is no federal maritime rule governing construction of maritime insurance contracts).  The meaning of Stratford's "Additional Assured" provisions requires a commonsense, intent-based interpretation of the contract, and does not implicate any "entrenched federal precedent," nor other federal rule that is "materially different" from state rules.  *Anh Thi Kieu*, 927 F.2d at 886.  And no party cites any federal maritime law on this issue.  Furthermore, the state of Louisiana "has a substantial and legitimate interest in the application of its law" in this case, *id.*, which concerns insurance coverage for the injuries of a Louisiana plaintiff, working for a Louisiana company, while in Louisiana.  *See Irwin v. Eagle Star Ins. Co.*, 455 F.2d 827, 830 (5th Cir. 1972) (holding that Florida had a substantial and legitimate interest in the interpretation of the maritime insurance contract where the plaintiff was a Florida resident and the boat was anchored in

Florida).  Accordingly, the Court applies Louisiana law to the question of whether ADM and ARTCO are Additional Assureds under the Policy.

Under Louisiana law, an insurance policy "is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003); *see also Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 334 (5th Cir. 2001) (citing *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994)). The Louisiana Civil Code provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. The Code further provides that "[t]he words of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046; *see also Carrier v. Reliance Ins. Co.*, 759 So. 2d 37, 43 (La. 2000) ("An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by the terms or so as to achieve an absurd conclusion."). The Louisiana Supreme Court has made clear that, "[i]f the policy wording at issue is clear and unambiguously expresses the parties'

intent, the insurance contract must be enforced as written." *Cadwallader*, 848 So. 2d at 580.

Any ambiguities in a policy "must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions." *La. Ins. Guar. Ass'n*, 630 So. 2d at 763 (citing La. Civ. Code art. 2050). The Louisiana Civil Code provides that a policy provision "susceptible of different meanings" must be interpreted to have "the meaning that best conforms to the object of the contract," La. Civ. Code art. 2048, and "that renders [the provision] effective," rather than "ineffective," *id.* art. 2049. Ambiguities may also be resolved "by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *La. Ins. Guar. Ass'n*, 630 So. 2d at 764 (quoting *Breland v. Schilling*, 550 So. 2d 609, 610-11 (La. 1989)).

"If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured." *Id.* Accordingly, "equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer." *Cadwallader*, 848 So. 2d at 580.

14

Here, the Court finds that Stratford's insurance policy unambiguously includes both ADM and its subsidiary, ARTCO, as Additional Assureds. The Policy grants Additional Assured status to "corporations for whom [Eymard] is working, directly, or indirectly, when required, provided the loss or damage . . . occurs during and as a result of the actual performance of such work."[38]  Eymard's Time Charter Agreement with ADM expressly provided that Eymard was to procure P&I coverage under a policy that "include[d] [ADM], and its affiliated or related companies, as an additional insured."[39] ARTCO, a wholly owned subsidiary of ADM,[40] is plainly included in this requirement. And plaintiff's injury "occur[red] during and as a result of the actual performance"[41] of the work required by the Time Charter Agreement. Based on the "clear and explicit" words of the Policy, La. Civ. Code art 2046, the Court finds that ADM and ARTCO are Additional Assureds under the Stratford policy.

Stratford's arguments to the contrary are unpersuasive. It asserts that, while ADM is an Additional Assured under the Policy, ARTCO is not. It contends that the Policy excludes from Additional Assured status any party

---

[38]     R. Doc. 61-3 at 6.
[39]     R. Doc. 61-2 at 5.
[40]     R. Doc. 29 ¶ 3.
[41]     R. Doc. 61-3 at 6.

that "is not actually engaged or involved in the intended operations at the time of loss,"[42] and that, because Eymard contracted with ADM, rather than its subsidiary ARTCO, ARTCO is precluded from being named an Additional Assured.[43]   The Court rejects this argument.   First, the limitation on Additional Assureds cited by Straford does not apply to Eymard's addition of ADM and ARTCO.   This restrictive clause opens with the phrase, "[n]otwithstanding the *preceding* provisions."[44]   The preceding provisions grant a general privilege to add Additional Assureds, with no reference to contractual requirements.   The *following* provisions, on the other hand, permit the naming of Additional Assureds "[w]here required by contract."[45] This section states that "[p]ermission is *also* granted" to name as Additional Assureds any entities "for whom the Assured is working, directly or indirectly, when required, provided the loss or damage . . . occurs during and as a result of the actual performance of such work."[46]   The use of the word "also" indicates a separate authorization to name Additional Assureds.   This bifurcated structure thus suggests two alternative routes to naming Additional Assureds under the Policy: one a general, elective privilege,

---

[42]   R. Doc. 74 at 5 (quoting R. Doc. 61-3 at 6).
[43]   *Id.*
[44]   R. Doc. 61-3 at 6 (emphasis added).
[45]   *Id.*
[46]   *Id.* (emphasis added)

limited to parties "actually engaged or involved in the intended operations," and the other a privilege triggered by contract, broadly available to any entities for whom the Named Assured is "directly or indirectly" working, so long as the loss occurs "during and as a result of the actual performance of such work."[47]

Eymard's addition of ADM and ARTCO, required by contract, fits the latter category. And both ADM and ARTCO satisfy the requirements for Additional Assureds under that provision, because both are entities "for whom [Eymard] [was] working, directly or indirectly."[48] Eymard's obligation under its contract with ADM was to move ARTCO-owned barges around ADM's grain elevator.[49] And plaintiff's injuries "occur[red] during and as a result of the actual performance" of that contract.[50] Accordingly, both ADM and ARTCO plainly satisfy Stratford's expansive criteria for who can be added as Additional Assureds when required by contract. Accordingly, the Court finds that the Policy unambiguously includes both ADM and ARTCO as Additional Assureds.

---

[47]   *Id.*

[48]   *Id.*

[49]   R. Doc. 64-4 at 3-4 (Corporation Deposition of ADM and ARTCO).

[50]   R. Doc. 61-3 at 6.

## B.    Coverage

Having found that both ADM and ARTCO are Additional Assureds under the Policy, the Court proceeds to determine whether the Policy covers liabilities arising out of plaintiff's slip-and-fall.  Here, the policy form listing covered liabilities stated—before its modification by the parties—that Stratford would cover liabilities that "the Assured shall *as owners of the vessel named herein* have become liable to pay."[51]  The Fifth Circuit has held that an "as owner of" clause requires that there be "some causal operational relation between the vessel and the resulting injury."  *Gaspard v. Offshores Crane & Equip. Co.*, 106 F.3d 1232, 1237 (5th Cir. 1997) (quoting *Lanasse v. Travelers Ins. Co.*, 450 F.2d 580, 584 (5th Cir. 1971)).  For instance, in *Lanasse*, the Fifth Circuit held that an "as owner of" clause precluded coverage of an injury caused by a platform owner's operation of a crane, because the injury was "done through nonvessel operations," and the vessel was simply "the inert locale of the injury."  450 F.2d at 584.  It explained that the Assured's "actions as a platform operator or as a crane operator . . . caused the harm, and that does not make it a liability of a shipowner."  *Id.*

But here, Eymard's contract with ADM required that Eymard's P&I coverage omit the "as owner of" clause, "or other such limiting clause," as to

---

[51]    *Id.* at 42 (emphasis added).

18

ADM and ARTCO.[52]  And Stratford's policy expressly provides that, "[w]hen required by contract, . . . [t]he so-called . . . 'As Owner Of' clause[] as [it] appear[s] in the printed forms contained herein shall not apply."[53] Therefore, the phrase, "as owners of the vessel named herein" is deleted as to ADM and ARTCO.  The Fifth Circuit has held that, when the parties agree to omit the "as owner of" clause, *Lanasse*'s "'causal operational relation' test [is] inapplicable." *Gaspard*, 106 F.3d at 1237 (quoting *Lanasse*, 450 F.2d at 584).  In *Helaire v. Mobil Oil Co.*, the relevant P&I policy provided coverage "against liabilities . . . in respect of the vessel" to Mobil, the operator of the offshore platform onto which the plaintiff was unloading casing when he was injured.  709 F.2d 1031, 1033, 1042 (5th Cir. 1983).  There, the policy deleted the phrase, "as owner of the vessel named herein." *Id.* at 1042.  The Fifth Circuit agreed with the district court's finding that the deletion of the "as owner of" clause "was intended to provide coverage for Mobil . . . regardless of whether [it] incurred liability as a 'vessel owner' or as a 'platform operator.'" *Id.*

---

52   R. Doc. 61-2 at 5 ("Owner shall procure and its sole expense and maintain in force and effect . . . [p]rimary and excess protection and indemnity, . . . with 'as owner of' clause or other such limiting clause deleted as to Charterer, its affiliates or related companies, with contractual coverage to cover the obligation of Owner to Charterer under this Agreement.").

53   R. Doc. 61-3 at 6.

In a later case, the Fifth Circuit reaffirmed this reasoning, reversing the district court's holding that a P&I insurer did not owe coverage for a platform operator's negligence, because the "as owner of" clause had been deleted from the policy. *Gaspard*, 106 F.3d at 1237-38; *see also Randall v. Chevron U.S.A.*, 13 F.3d 888, 908 (5th Cir. 1994) (discussing *Helaire*, 709 F.2d at 1041-42) ("[T]he words 'as owner of the vessel' had been deleted from the policy, so the time charterer was entitled to coverage . . . ."). Accordingly, Fifth Circuit precedent is clear that omitting an "as owner of" clause "can expand coverage to include injuries inflicted as a platform operator rather than merely as the operator of the vessel." *Gaspard*, 106 F.3d at 1237.

Here, the parties do not dispute that the "as owner of clause" has been deleted as to ADM and ARTCO. The Policy is clear that "[w]hen required by contract," the "'As Owner Of' clause[] as [it] appear[s] in the printed forms contained herein shall not apply."[54] And while Stratford could have included a provision limiting the effect of this deletion, it did not do so. *Compare In re Crescent Energy Servs.*, No. 15-5783, 2017 WL 2472357, at *3 (E.D. La. June 8, 2017) (finding that the deletion of an "as owner of" clause did not expand coverage to non-vessel-owner's liabilities because the clause effecting the deletion said, "[n]otwithstanding the above, this clause shall not

---

[54]     *Id.*

extend the insuring conditions beyond vessel operations"). For these reasons, the Court finds that, as a matter of law, Stratford's policy extends coverage to ADM and ARTCO's vessel-related liabilities.

The final question, then, is whether the liabilities at issue here are sufficiently vessel-related for the purposes of P&I coverage. The expansion of coverage afforded by the deletion of the "as owner of" clause does not fully resolve this question. With the "as owner of" clause deleted, the Policy's only remaining constraint on the scope of covered liabilities is that the losses, damages, and expenses must be "*in respect of* the vessel."[55]  No party, in its briefing on these motions, purports to interpret this language. But to assess whether plaintiff's injuries are sufficiently vessel-related to be covered by the Policy, such an interpretation is necessary.

In both *Gaspard* and *Helaire*, the plaintiffs' injuries took place *aboard* the vessels covered by the P&I policies. Accordingly, neither court considered whether the liabilities were indeed vessel-related, because they clearly were. This case is different. Plaintiff here was not aboard the vessel, and was instead in the process of stepping onto the vessel when he slipped and fell.[56]  Plaintiff testified that he does not recall whether his foot ever

---

[55]   *Id.* at 42 (emphasis added).

[56]   R. Doc. 64-6 at 7 (Deposition of Clifton Badeaux).  The parties do not dispute that plaintiff was a captain of the scheduled vessel, who was

touched the vessel.[57]  The Court must therefore determine whether the term "in respect of the vessel" is broad enough to include injuries in these circumstances.

Finding no specific, controlling federal maritime authority on the construction of this or similar language, the Court refers to Louisiana state law and dictionary definitions to assist in the interpretation and construction of this provision.  *See Anh Thi Kieu*, 927 F.2d at 886 (holding that, "in the absence of a specific and controlling federal rule," a marine insurance contract is "to be determined by reference to appropriate state law"); *Walton v. ES&H, Inc.*, 296 F.R.D. 470, 473 (E.D. La. 2013) (consulting dictionaries to interpret terms in a marine insurance contract); *United Specialty Ins. Co. v. Porto Castelo, Inc.*, No. 15-1036, 2016 WL 2595072, at *7 (S.D. Tex. May 5, 2016) (same).

Stratford's coverage under the Policy is limited to liabilities "in respect of" the M/V PEARL C. EYMARD.  Merriam-Webster defines "in respect of"

---

allegedly injured while boarding the scheduled vessel.  R. Doc. 61-4 ¶ 2 (Stratford's Statement of Uncontested Material Facts); R. Doc. 64-2 ¶¶ 16-17 (ADM and ARTCO's Statement of Uncontested Material Facts).

[57]   R. Doc. 64-6 at 7 (Deposition of Clifton Badeaux) ("I can't remember if I touched the boat yet or not.  It just—it happened so quick.  I did pick up my left foot to step on the PEARL EYMARD, and the next thing I know my right foot just come out from underneath me.").

as "concerning" or "with respect to."[58]  "With respect to" is in turn defined as "with reference to," or "in relation to."[59]  Louisiana courts have interpreted similar language in insurance contracts, and found the meaning to be expansive.  For instance, the phrase "'in connection with,' has been defined as 'being related to or associated with, but not the primary or only purpose of' in an insurance policy.'"  *Poole v. Ocean Drilling & Expl. Co.*, 439 So. 2d 510, 512 (La. App. 1 Cir.), *writ denied*, 443 So. 2d 590 (La. 1983) (citing *Daire v. S. Farm Bureau Cas. Ins. Co.*, 143 So.2d 389 (La. App. 3 Cir. 1962)).  The language, "in respect of," is therefore broad.  It requires no causal connection between the vessel's operations and plaintiff's injuries, and instead merely provides that the injuries must be "with respect to," "in relation to," or "associated with" the vessel.

Nonetheless, even having acknowledged the breadth of the phrase's meaning, the Court does not find that the "policy wording at issue is clear," or that it "unambiguously expresses the parties' intent" regarding coverage. *Cadwallader*, 848 So. 2d at 580.  On the contrary, this language is susceptible of different reasonable meanings as to the scope of coverage.  La. Civ. Code art. 2048; *see also Bonin v. Westport Ins. Corp.*, 930 So. 2d 906,

---

[58]    Merriam-Webster, *respect* (Oct. 22, 2021), https://www.merriam-webster.com/dictionary/respect.

[59]    *Id.*

911 (La. 2006) (citing *Cadwaller*, 848 So. 2d at 580). On the one hand, an injury sustained by a captain of the vessel, incurred while stepping from an adjacent dock onto the vessel, while performing the work for which the vessel was chartered, may fairly be said to be a liability "in respect of the vessel." On the other hand, a fall on ARTCO's adjacent dock, not alleged to have resulted from any hazardous condition onboard the vessel itself,[60] might *not* be a liability "in respect of the vessel."

Faced with this ambiguity, the Court resorts to other Louisiana rules governing the construction of insurance contracts. Those rules do not resolve the ambiguity. For instance, seeking "the meaning that best conforms to the object of the contract," La. Civ. Code art. 2048, is unhelpful here, because the very issue is whether coverage of this issue was the object of the contract. Similarly, neither of the competing interpretations renders the provision "ineffective." La. Civ. Code art. art. 2049. The provision is effective under either interpretation, as it imposes the requirement that covered liabilities must have a nexus to the vessel. The question presented here is precisely how close the nexus must be.

---

[60]    Plaintiff does not allege that any hazards physically onboard the vessel caused his fall, but his complaint does allege negligence against Eymard, including for "[f]ailing to provide plaintiff with a safe place to work." R. Doc. 5 ¶ 6.

The Court thus finds that, "after applying the other general rules of construction," the scope of coverage remains ambiguous. *La. Ins. Guar. Ass'n*, 630 So. 2d at 764. Accordingly, "the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured." *Id.* Because Stratford's requirement that covered liabilities be "in respect of the vessel" is "susceptible to two or more reasonable interpretations," it is "strictly construed against the insurer," and "in favor of coverage." *Bonin*, 930 So. 2d at 911 (citing *Cadwaller*, 848 So. 2d at 580). Accordingly, the Court resolves the ambiguity against Stratford, and finds that the liabilities arising out of plaintiff's injuries incurred while boarding the vessel, are "in respect of the vessel."[61] These liabilities are therefore covered by the Policy.

For these reasons, the Court finds that Stratford's policy provides coverage to ADM and ARTCO for liabilities incurred as a result of plaintiff's injuries sustained on January 3, 2019. Accordingly, the Court grants ADM and ARTCO's motion for summary judgment. Stratford owes ADM and ARTCO defense and indemnity for plaintiff's claims against them.

Having found that Stratford owes coverage for the reasons given, the Court need not reach ADM and ARTCO's other asserted bases for coverage.

---

[61]   R. Doc. 61-3 at 42.

Specifically, the Court does not interpret nor address the effect of the indemnification provision,[62] the Marine Employer's Liability Clause,[63] or the Non-Owned Vessels Clause.[64]

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS ADM and ARTCO's motion for summary judgment, and DENIES Stratford's motion for summary judgment.

New Orleans, Louisiana, this ___25th___ day of October, 2021.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[62]   R. Doc. 61-2 at 6.
[63]   R. Doc. 61-3 at 38.
[64]   *Id.*

26